

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TRANS-PACIFIC SHIPPING CO.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO.  00-0389** |
| **BLUE CLOUD SHIPPING & TRADING** | * | **SECTION  "K"** |
| *    *    *    *    *    *    *    *    * | | **MAGISTRATE (2)** |

## PRE-TRIAL ORDER

1.   The pre-trial conference is scheduled for Thursday, 13 September 2001 at 1:00 p.m.

2.   **Appearance of Counsel:**

   Robert H. Murphy, T.A. (#9850)
   Peter B. Sloss (#17142)
   Scott E. Oliphant (#23885)
   MURPHY, ROGERS & SLOSS
   701 Poydras Street
   Suite 400, One Shell Square
   New Orleans, Louisiana 70139
   Telephone: (504) 523-0400
   Attorneys for Trans-Pacific Shipping Co.

DATE OF ENTRY
SEP 1 8 2001



James H. Roussel (#11496)
Robin C. Minturn (#25797)
Phelps Dunbar, L.L.P.
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Attorneys for Blue Cloud Shipping & Trading, Inc.

## 3.    Description of the Parties

### a)    Trans-Pacific Shipping Co.

The plaintiff, Trans-Pacific Shipping Co., the owner of the M/V CHINA SPIRIT,
is a corporation existing under the laws of a foreign nation.

### (b)    Blue Cloud Shipping and Trading, Inc.

Blue Cloud Shipping and Trading, Inc. is a foreign corporation existing under the
laws of a foreign nation and at all material times was the owner of the M/V EL
FLAMENCO, a Panamanian flagged vessel of 225 m in length, 32.2 m in breadth, 18.3
m in depth and a gross tonnage of 36,573.

## 4.    Jurisdiction

This is an admiralty and general maritime law claim within the meaning of Rule
9(h) of the Federal Rules of Civil Procedure, and jurisdiction is proper before this Court
pursuant to Article III, Section 2 of the United States Constitution, and 28 U.S.C. §1333,

inasmuch as this case involves damage caused and/or sustained by one or more vessels on navigable waters of the United States. Jurisdiction is not contested.

**5.    Pending Motions and Special Issues**

    **(a)    Pending**

Blue Cloud has previously admitted liability for the collision. The only remaining issues concern plaintiff's damages. In an effort to obtain all of the documents and information necessary to evaluate plaintiff's damage claim, Blue Cloud submitted a Request for Production of Documents to plaintiff. When plaintiff failed to fully respond to Blue Cloud's Request, Blue Cloud filed a Motion to Compel, which was granted in part by Magistrate Wilkinson. Although Trans-Pacific was ordered to respond to Blue Cloud's discovery by August 29, 2001, Trans-Pacific has not produced all of the documentation.

    **(b)    Contemplated**

Trans-Pacific may file a motion *in limine* with respect to the admissibility of certain evidence and testimony to be offered into evidence.

Blue Cloud contemplates filing a Motion in Limine with regard to documents related to plaintiff's loss of use claim. All documents relating to this claim were requested by Blue-Cloud in its Request for Production of Documents and its production has been ordered by Magistrate Wilkinson. Despite defendant's repeated attempts to

obtain information from the plaintiff, Trans-Pacific has produced only a few of the

documents necessary to evaluate and support plaintiff's loss of use claim.

**6.    (a)    Trans-Pacific Shipping Co.'s Summary of Material Facts:**

This matter involves an allision occurring on the Mississippi River on 4 February

2000.  On that date, the M/V CHINA SPIRIT was struck on her stern by the M/V EL

FLAMENCO while the M/V CHINA SPIRIT was lying at anchor in the Mississippi

River.  Blue Cloud Shipping & Trading, Inc. ("Blue Cloud"), the owners of the M/V EL

FLAMENCO, have stipulated to liability for this incident.  Furthermore, Blue Cloud

does not contest portions of Trans-Pacific's damages claim.  The uncontested amount of

Trans-Pacific's claim totals $106,820.50, which includes among other things, expenses

for temporary repairs at New Orleans, damage surveys, agency fees at New Orleans,

classification society fees and permanent repairs at Shanghai.  The primary issue in

dispute concerns Trans-Pacific's claim for lost charter hire for collision related delays at

New Orleans and Shanghai.

As a result of the allision on 4 February 2000, the M/V CHINA SPIRIT sustained

significant damage to her stern.  At the time, the evidence will establish the M/V CHINA

SPIRIT was under charter and was scheduled to shift to a berth to commence loading a

grain cargo bound for Kobe, Japan on the morning of 5 February 2000.  However, due to

the damage caused in the incident, the vessel required repairs before loading could begin.

4

The vessel's classification society, the American Bureau of Shipping ("ABS") surveyed the vessel on 5 February 2000 and made recommendations regarding the repairs to be performed.

Shortly after the incident, the owners of the M/V CHINA SPIRIT obtained estimates for permanent repairs to be conducted in the Gulf South area. Bids for these repairs were received from Bender Ship Building & Repair Co., Inc. ("Bender") and Boland Marine & Manufacturing Co., Inc. ("Boland"). Bender's estimate for these repairs totaled $576,205 and Bender anticipated it would take 15 days to complete the repairs. Boland's estimate for these permanent repairs totaled $406,253 and Boland anticipated it would take 20 days to complete the repairs.

In an effort to reduce the costs associated with the repairs, the owners of the M/V CHINA SPIRIT decided to conduct temporary repairs, with limited delay and expense in New Orleans, so that the vessel could load her cargo and complete her intended voyage to Kobe, Japan. Thereafter, the vessel would undergo permanent repairs in an Asian shipyard at significantly reduced cost.

Temporary repairs were performed in New Orleans by Boland and these repairs were completed on 8 February 2000. The vessel began loading her intended cargo later that day and, ultimately, completed her voyage to Japan. Thus, the delay at New Orleans totals 3.85 days. In the interim, the owners of the M/V CHINA SPIRIT obtained

5

estimates for permanent repairs from various Asian shipyards. The low bidder from the various Asian shipyards was selected, and permanent repairs were performed at the Shanghai Lifeng Shipyard, in Shanghai, China. The permanent repairs, including sailing time from Japan to China, were completed in 15.05 days. Even accounting for weather related bunkering difficulties, this delay period is five days shorter than the estimated time to repair the vessel submitted by Boland. As a result, substantial damage repair costs and consequential damages were saved by Trans-Pacific's decision to perform permanent repairs in the Far East rather than the United States.

Trans-Pacific maintains it is entitled to recover lost charter hire during the entire delay period at New Orleans and Shanghai, for a total of 18.9 days. Trans-Pacific submits that calculating the vessel's average charter rate, based on the pre-casualty, casualty and post-casualty voyages, yields a daily charter rate of $10,416.40. Consequently, Trans-Pacific's claim for lost charter hire totals $196,869.96. Trans-Pacific further maintains it is entitled to recover other miscellaneous expenses, including the following:

| | | |
|---|---|---|
| 1. | Launch Service - New Orleans | $  3,640.00 |
| 2. | Bunkers - New Orleans | $  1,673.62 |
| 3. | Port Captain Expenses - New Orleans | $  1,461.00 |
| 4. | Agency Fees - Shanghai | $ 14,587.97 |

6

| | | |
|---|---|---|
| 5. | Bunkers - Shanghai | $ 15,795.04 |
| 6. | Rudder Repair Invoices | $   3,500.00 |
| | **SUBTOTAL:** | **$  44,657.63** |

Each and every item of damage is fully supported by invoices and other documentation. In sum, Trans-Pacific maintains that it is entitled to judgment in the amount of $344,348.49, plus pre-judgment interest from 4 February 2000 until paid, which consists of the undisputed claims, the lost charter hire and the miscellaneous expenses.

**(b) Blue Cloud's Summary of Material Facts:**

On January 30, 2000 the CHINA SPIRIT, dropped anchor at Southwest Pass in the Mississippi River at approximately 1800 hours. The vessel had sailed to Louisiana in a ballasted condition after discharging its last cargo in Mobile. While at anchor the CHINA SPIRIT cleaned its holds in preparation for loading grain pursuant to a voyage charter with ADM Shipping Co. ("ADM").

On February, 1, while at the Twelve Mile Point Anchorage the vessel's holds underwent inspection by the United States Department of Agriculture. Holds 2, 4, 6 and 7 passed inspection but holds 1, 3 and 5 were not issued loading certificates due to the residue left from the previous cargo. The holds which did not pass inspection on February 1, 2000 were cleaned by the crew and were re-inspected on February 2, 2000.

7

Upon reinspection, the United States Department of Agriculture issued loading certificates for all holds of the CHINA SPIRIT. The vessel then tendered a notice of readiness to ADM on February 2, 2000. In correspondence to Navios Ship Agencies, Inc. ("Navios"), the steamship agents for the CHINA SPIRIT, ADM initially advised that the CHINA SPIRIT would not receive a berth and begin loading until February 5th or 6th. On February 4th, ADM advised of further delay and indicated in correspondence to the agents for the CHINA SPIRIT that a berth would not be available until February 7th or 8th.

Due to a strong northerly wind on February 4, 2000, the CHINA SPIRIT shifted position at anchorage and was lying perpendicular to the West Bank. While proceeding upbound at 2116 on February 4th, the bow of the EL FLAMENCO struck the stern of the CHINA SPIRIT resulting in damage to both vessels.

Although temporary repairs could have easily begun on February 6, 2001, Trans-Pacific did not arrange for Boland Marine to begin temporary repairs until 0200 hours on February 8, 2000. The temporary repairs were completed at 1800 on February 9, 2000. The CHINA SPIRIT sent a second Notice of Readiness to ADM on February 8, 2000. Although restrictions were lifted on the vessel on the 8th, the vessel did not load at ADM until the evening of the 9th.

8

The vessel then proceeded to Japan for discharge.  Following discharge in Japan the vessel sailed for Shanghai and arrived at the Shaghai Lixin Shipyard on April 4, 2000.  Permanent repairs were completed on the morning of April 14, 2000 and the vessel was set to sail on the tide at 1730.  However, the vessel was unable to leave Shanghai until April 16, 2000 for reasons unrelated to the collision including the master of the CHINA SPIRIT's failure to submit the proper application for bunkering and problems with the lube oil separator.

7.    **Proposed Uncontested Material Facts**:

1.    The M/V CHINA SPIRIT was struck by the M/V EL FLAMENCO on 4 February 2000 and sustained damage.

2.    Blue Cloud Shipping & Trading, Inc., the owners of the M/V EL FLAMENCO, are solely at fault in causing the allision.

3.    The M/V CHINA SPIRIT underwent temporary repairs in New Orleans, and commenced loading her scheduled cargo on 9 February 2000.

4.    The owners of the M/V CHINA SPIRIT incurred survey expenses at New Orleans as a result of the allision in the amount of $1,220.00.

5.    Temporary repairs performed by Boland Marine & Manufacturing Company, Inc. at New Orleans related to the allision total $18,309.00.

6.    The owners of the M/V CHINA SPIRIT incurred expenses in having its port engineer attend the vessel at New Orleans at a result of the allision in the amount of $2,219.19.

7.    The owners of the M/V CHINA SPIRIT incurred expenses for tug assistance at New Orleans as a result of the allision in the amount of $7,612.50.

9

8.  The owners of the M/V CHINA SPIRIT incurred agency fees at New Orleans as a result of the allision in the amount $6,846.19.

9.  The owners of the M/V CHINA SPIRIT incurred line handling expenses at New Orleans as a result of the allision in the amount of $1,245.00.

10. The owners of the M/V CHINA SPIRIT incurred classification society expenses in the amount of $8,165.24 related to expenses and surveys performed due to the allision.

11. Permanent repairs related to the allision were performed at the Shanghai Lifeng Shipyard at a cost of $52,571.60.

12. The owners of the M/V CHINA SPIRIT incurred expenses in having its port engineer attend the repairs at Shanghai as a result of the allision in the amount of $5,892.78.

13. Plaintiff, Trans-Pacific Shipping Co., is a foreign corporation and was and now is the owner of the CHINA SPIRIT, a vessel of 225 meters in length, 32.2 meters in breadth, 18.7 meters in depth and 38,679 in gross tonnage.

14. The M/V EL FLAMENCO is a bulk carrier of 36,573 gross tons, with principal dimensions of 225 meters in length, 32.2 meters in breadth, and 18.3 meters in molded depth.

15. Blue Cloud Shipping & Trading, Inc is a foreign business entity and was at all material times the owner of the M/V EL FLAMENCO.

16. On February 4, 2000, the M/V CHINA SPIRIT was anchored at the Twelve Mile Anchorage in the Mississippi River, approximately mile 80.6 AHP below New Orleans.

17. On February 4, 2000, the EL FLAMENCO was proceeding upbound on the Mississippi River.

18. At approximately 2021 hrs. on February 4, 2000 the EL FLAMENCO allied with the CHINA SPIRIT in the Mississippi River.

10

19.    Trans Pacific has admitted liability for the allision.

**8.    Contested Issues of Fact**

1.    Trans-Pacific's damages.

2.    Whether the M/V CHINA SPIRIT was delayed at New Orleans from 2120 hours on 4 February 2000 until 1736 hours on 8 February 2000 as a result of the allision.

3.    Whether the owners of the M/V CHINA SPIRIT incurred damages in the form of lost charter hire as a result of the delay at New Orleans, in the amount of $40,045.25.

4.    Whether the owners of the M/V CHINA SPIRIT incurred expenses for agency fees at Shanghai related to the allision in the amount of $14,587.97.

5.    Whether the owners of the M/V CHINA SPIRIT incurred damages in the form of lost charter hire as a result of the delay at Shanghai due to the allision in the amount of $156,825.15.

6.    Whether the owners of the M/V CHINA SPIRIT incurred expenses for bunkers at Shanghai as a result of the allision in the amount of $15,795.04.

7.    Whether Trans-Pacific properly mitigated its damages associated with the collision.

8.    Whether the collision resulted in Trans-Pacific's loss of use of the CHINA SPIRIT from February 4, 2000 to February 8, 2000.

9.    The amount and nature of Trans-Pacific's alleged losses, including but not limited to, the vessel's employment, charter rates, availability of substitute vessels, prior and subsequent voyages, expenses saved, and operational expenses.

10.    The cause of delay of the CHINA SPIRIT in leaving the shipyard in
       Shanghai.

11.    Whether the CHINA SPIRIT was on charter at the time of the collision.

12.    The time and/or voyage charterer and charter rate for the inbound voyage to
       New Orleans.

13.    Whether all crew members present on board the CHINA SPIRIT in
       Shanghai were necessary to complete vessel repairs related to the collision.

14.    Whether the CHINA SPIRIT was on charter prior to leaving the shipyard in
       Shanghai.

15.    The utilization rate for the CHINA SPIRIT and the availability of substitute
       vessels.

16.    Whether the overtime of the crew of the CHINA SPIRIT was related to
       collision repairs in New Orleans and Shanghai.

17.    The amount of bunkers consumed while the vessel was undergoing repairs
       in New Orleans and Shanghai.

18.    Whether repairs to the CHINA SPIRIT'S No. 6 compartment were related
       to the collision.

19.    The components of the crew wage claim.

20.    The nature and extent of non-collision repairs conducted in Shanghai.

21.    The expense attributable to the CHINA SPIRIT's Port Captain.

22.    How wharfage charges from the shipyard in Shanghai should be allocated.

23.    The amount of agency fees from the CHINA SPIRIT's agents in Shanghai
       that are attributable to non-collision repairs.

24.    Whether repairs to the rudder of the CHINA SPIRIT were related to the collision.

25.    The terms of the applicable charter parties.

26.    Trans-Pacific's expenses under the applicable charter parties.

27.    Whether Trans-Pacific required both a Port Captain and Port Engineer in New Orleans to oversee collision related repairs.

28.    The nature and extent of damage to the lube oil separator.

29.    The amount of time the vessel may have been delayed in New Orleans and Shanghai due to repairs unrelated to the collision.

30.    Whether temporary repairs to the CHINA SPIRIT could have begun prior to 8 February 2000.

## 9.    Contested Issues of Law

1.    Causation of Trans-Pacific's alleged damages.

2.    Whether Trans-Pacific properly mitigated its damages.

3.    The reasonableness of the amount claimed for physical damages.

4.    Trans-Pacific's entitlement to claim for loss of use/loss of profits.

5.    Whether plaintiff has submitted any evidence that is probative of Trans-Pacific's loss of use claim.

6.    Whether Trans-Pacific has presented sufficient evidence to establish loss of profits/loss of use to a reasonable certainty.

7.    The proper method to calculate loss of use damages.

8.    Whether the delay in leaving Shanghai following permanent repairs is attributable to Blue Cloud.

13

9.    The effect of Trans-Pacific's failure to comply with the magistrate's order requiring Trans-Pacific to more fully respond to Blue-Cloud's request for production of documents.

10.    Whether Trans-Pacific is entitled to both bunker expenses and charter hire as part of the loss of use claim.

11.    Whether Trans-Pacific is entitled to both charter hire and crew wages as part of the loss of use claim..

12.    Whether Trans-Pacific is entitled to be reimbursed for the expenses of a Port Captain and Port Engineer.

13.    The parties responsible for payment of crew wages and bunkers pursuant to the applicable charter parties.

14.    The shipowner's expenses saved by non-operation of the vessel in Shanghai and New Orleans.

15.    The amount of the CHINA SPIRIT's agency fees attributable to collision repairs in Shanghai.

16.    Whether the "three voyage rule" is applicable to Trans-Pacific's loss of use claim.

17.    The proper method of calculating loss of use damages under the "three voyage rule."

## 10.    Plaintiff's Exhibit List

1.    Damage Surveys of "CHINA SPIRIT" and "EL FLAMENCO" by Sabine Surveyors (Invoice No. 2161 dated February 28, 2000, New Orleans, Louisiana)

2.    Port Ship Service Invoice for launch service to vessel (Invoice No. 0336910 dated February 8, 2000, New Orleans, Louisiana

3.  Boland Marine & Manufacturing Company, Inc. Invoice for temporary repairs (Invoice No. 0002-065 dated February 2000, New Orleans, Louisiana)

4.  Cooper T. Smith Invoice for line handling services (Invoice No. 118389 dated February 15, 2000, New Orleans, Louisiana)

5.  Cooper T. Smith Invoice for line handling services (Invoice No. 118390 dated February 15, 2000, New Orleans, Louisiana)

6.  Cooper T. Smith Invoice for line handling services (Invoice No. 118391 dated February 15, 2000, New Orleans, Louisiana)

7.  Crescent Towing & Salvage Company, Inc. Invoice for tug assistance (Invoice No. 112091 dated February 16, 2000, New Orleans, Louisiana)

8.  Crescent Towing & Salvage Company, Inc. Invoice for tug assistance (Invoice No. 112095 dated February 16, 2000, New Orleans, Louisiana)

9.  Port Engineer expenses for Herb Stephens, New Orleans:
    (a)  Airfare, Portland to New Orleans, Mastercard Statement, March 4, 2000

    (b)  Quality Inn Marina Hotel receipt, dated February 6, 2000

    (c)  Hotel Intercontinental receipts, dated February 7-9, 2000

    (d)  Receipt for Broadway Cab, dated February 9, 2000, Portland, Oregon

    (e)  Receipt for Radio Cab, dated February 5, 2000, Portland, Oregon

    (f)  Receipt for airfare, New Orleans to Portland, dated February 8, 2000

10.  Port Captain Expenses, George Mitev, New Orleans, Louisiana

    (a)  Mastercard statement, airfare from Portland to New Orleans, dated March 4, 2000

15

       (b)    Receipt, Raja Tours Airporter, dated February 5, 2000, Portland, Oregon

       (c)    Receipt for airfare, New Orleans to Portland, dated February 8, 2000

11.    Navios Ship Agencies invoice; disbursement account summary (Invoice No. 35089, dated March 31, 2000, St. Rose, Louisiana)

12.    Crescent City Port Pilots Association pilotage service (Invoice No. 98916, dated February 10, 2000, Belle Chasse, Louisiana)

13.    Summary of DHL Shipment Airway Bills (Report I.D. No. 3181, dated February 24, 2000)

14.    DHL Shipment Airway Bills (Nos. 8921184160; 8017496524; 8017496513)

15.    Summary of DHL Shipment Airway Bills (Report I.D. No. 3181, dated February 24, 2000)

16.    DHL Shipment Airway Bills (Nos. 8017497460; 8017496502)

17.    Navios Ship Agencies, Inc., agency fee; overtime sheets (Invoice No. 8400, dated February 29, 2000, St. Rose, Louisiana)

18.    Navios Ship Agencies, Inc.; load/discharge expense sheet

19.    Navios Ship Agencies, Inc.; postage/telephone expense sheet (Invoice No. 6909, dated March 31, 2000, St. Rose, Louisiana)'

20.    M/V CHINA SPIRIT record of long distance calls dated January 26 - February 9, 2000

21.    M/V CHINA SPIRIT record of postage expenses dated January 30 - February 11, 2000

22.    Navios Ship Agencies, Inc; telex, postage expense sheet (Invoice No. 6867, dated March 14, 2000, St. Rose, Louisiana)

16

    (a)    faxes/e-mails from Navios Ship Agencies to LASCO, Inc. dated February 5, 2000 - February 10, 2000

    (b)    telex from New Orleans; Navagent dated February 5, 2000 - February 11, 2000

23.    1 February 2000 USDA Hold Examination Worksheets

24.    1 February 2000 NCB Hold Examination Report

25.    2 February 2000 Notice of Readiness

26.    2 February 2000 Application for Berth

27.    Hibernia Bank; funds transfer notification LASCO Shipping Company transfer to Navios Ship Agencies dated February 10, 2000

28.    American Bureau of Shipping invoice for classification bureau services (Invoice No. 8630003641, dated February 11, 2000, Houston, Texas)

29.    American Bureau of Shipping invoice for classification bureau services (Invoice No. 3670006342, dated February 15, 2000, New Orleans, Louisiana)

30.    American Bureau of Shipping invoice for classification bureau services (Invoice No. 60610804042, dated April 27, 2000, Shanghai, China)

31.    Debit note of payment for collision repairs by Shanghai Lifeng Shipyard dated May 16, 2000

32.    Shanhai Lifeng Shipyard invoice for repair of M/V CHINA SPIRIT (Invoice No. 00041651146, dated April 16, 2000, Shanghai, China)

33.    Shanhai Lifeng Shipyard "Work Done List" Sheets 1-8, dated April 16, 2000

34. Shanghai Marine Shipping Agency Trip Account (Acct No. S2000-5-24, dated May 31, 2000)

35. Shanghai Marine Shipping Agency pilotage bill (Invoice No. 2000040451, dated April 7, 2000)

36. Shanghai Marine Shipping Agency pilotage bill (Invoice No. 0006270, dated April 4, 2000)

37. Shanghai Marine Shipping Agency pilotage bill (Invoice No. 200041383, dated April 20, 2000)

38. Shanghai Marine Shipping Agency pilotage bill (Invoice No. 0016819, dated April 16, 2000)

39. Shanghai International Shipping Development Centre Tug Service Voucher (Invoice No. 0505206, dated April 4, 2000)

40. Tug Service Voucher of Shanghai Port (Invoice No. 05052234, dated April 16, 2000)

41. Tug Service Voucher of Shanghai Port ( Invoice No. 1031227, dated June 16, 2000)

42. Tug Service Voucher of Shanghai Port (Invoice No. 1031228, dated April 4, 2000)

43. Receipt of Entry-Exit Inspection/Quarantine (Invoice Nos. 00252525, 00277039, 00276826, dated April 4, 2000)

44. Entry Quarantine Declaration for Certificate for M/V CHINA SPIRIT dated April 4, 2000

45. Application Form for Conveyance for M/V CHINA SPIRIT dated April 6, 2000

46. Exit Quarantine Declaration for Certificate for M/V CHINA SPIRIT dated

47. The Seamen's Hospital of Shanghai - doctors' bills for M/V CHINA SPIRIT

    (a)    Invoice No. 0000726 dated April 14, 2000

    (b)    Invoice No. 0000784 dated April 11, 2000

    (c)    Invoice No. 0000782 dated April 11, 2000

    (d)    Invoice No. 0000785 dated April 11, 2000

48. Application for Medical Treatment, China Marine Shipping Agency for M/V CHINA SPIRIT dated April 11, 2000

49. China Marine Shipping Agency, Shanghai Branch Expenses for Delivery of Ship's Spare Parts dated April 7, 2000

50. Crane, Ltd. invoice; air waybill for heat exchanger for M/V CHINA SPIRIT (Reference No. BMRW32-0029)

51. China Marine Shipping Agency, Shanghai Branch Voucher for agency fees dated May 29, 2000

52. Shanghai Shipping Agency; debit note of agency fee dated May 29, 2000

53. Shanghai Marine Shipping Agency, Shanghai, China telefax records from April 5 - April 7, 2000; May 4, 2000

54. Taxi receipts; Shanghai, China dated April 2000

55. M/V CHINA SPIRIT vessel voyage record, Voyage 36

56. M/V CHINA SPIRIT vessel voyage record, Voyage 37

57. TORM debit note to LASCO Shipping Company dated May 1, 2000 for lost charter hire and bunker consumption

58. Port Engineer expenses; Herb Stephens; Shanghai, China
    (a)    Round trip airfare to Shanghai
    (b)    Meals and surface transportation
    (c)    Shanghai New Asia Tomson Hotel receipts dated April 2 - April 17, 2000
    (d)    Taxi receipts, Portland, Oregon dated April 17, 2000

59. Blue Marine Transportation invoice for travel of port engineer and port captain (Invoice No. 12512 dated February 10, 2000, New Orleans, Louisiana)

60. Dormac Marine Invoice #00560 dated 31 August 2000

61. International Paint Invoice #IH695086, dated 5/13/00

62. Estimates for Permanent repairs, including:
    a)    Boland Marine & Manufacturing
    b)    Bender Shipbuilding and Repair
    c)    Asian Shipyards

63. Charter Party for Voyage 36

64. Charter Party for Voyage 37

65. E-mail from TORM regarding details of charter party terms for Voyage No. 35

66. CHINA SPIRIT vessel itinerary

67. Salvage Association Report dated 8 March 2000

68. Salvage Association Report dated 8 May 2000

69. ABS file concerning M/V CHINA SPIRIT, including:
    a)    9 February 2000 Damage Survey Report
    b)    8 February 2000 Telefax approving temporary repairs
    c)    14 April 2000 Reports concerning collision and non-collision related repairs

20

70.     14 April 2000 e-mail message concerning departure from Shanghai

71.     4 February 2000 e-mail to Lasco from master concerning berthing arrangements at New Orleans

72.     5 February 2000 telefax from Intermare Shipping Agency, Inc. to Navios regarding berthing arrangements at New Orleans

**(b) Blue Cloud's Exhibits**

BLUE CLOUD intends to introduce the following exhibits at trial:

1.     Technical Maritime Associates Report, dated March 31, 2000

2.     Report of Andrew Moore & Associates, dated April 28, 2000

3.     Correspondence to and/or from ADM and/or Navios

    -     **Objection: Relevance**

4.     Correspondence to and/or from TORM.

    -     **Objection: Relevance**

5.     Baltimore Form C Berth Grain Charter Party dated January 18, 2000.

6.     Time Charter dated April 13, 2000.

7.     Correspondence to and/or from Lasco

    -     **Objection: Relevance**

8.     Correspondence to and/or from the CHINA SPIRIT

    -     **Objection: Relevance**

**11.**    **List of all deposition testimony to be offered into evidence.**

The parties reserve the right to use the deposition testimony of any witness who

will be unavailable for trial or is beyond the subpoena power of this Court, or for

impeachment, or for any other purpose allowed under the Federal Rules of Civil

Evidence.

**12.**    The parties may use charts, graphs, models, schematic diagrams, enlargements of

photographs or other exhibits and other similar objects during its opening statement and

closing argument.  Any such objects will be provided to counsel at least three (3) days

prior to trial.

**13.**    **Plaintiff's Witness List:**

**<u>Will Call</u>**

1.    Herbert Stephens - Port Engineer
       LASCO Shipping Company
       3200 N.W. Yeon Avenue
       P. O. Box 10047
       Portland, OR 97296

       May testify to damages sustained by the M/V CHINA SPIRIT

**May Call**

1.   George Mitev - Port Captain
     LASCO Shipping Company
     3200 N.W. Yeon Avenue
     P. O. Box 10047
     Portland, OR 97296

     May testify to damages sustained by the M/V CHINA SPIRIT

2.   James Henderson and/or other representative of Lasco Shipping Co.
     LASCO Shipping Company
     3200 N.W. Yeon Avenue
     P. O. Box 10047
     Portland, OR 97296

     May testify to loss of use damages sustained by the M/V CHINA SPIRIT,
     as well as charter party terms and voyage income for Voyage Nos. 35, 35
     and 37

3.   Oleksandr Yermolenko, Master of the M/V CHINA SPIRIT

     May testify to damages sustained by the M/V CHINA SPIRIT

4.   Bernard Teale
     Andrew Moore & Associates

     May testify to damages sustained by the M/V CHINA SPIRIT

5.   Ben Haveman
     Technical Maritime Associates, Inc.
     2908 Hessmer Avenue, Suite No. 1
     Metairie, Louisiana  70002

     May testify to damages sustained by the M/V CHINA SPIRIT

6.    David Periera
      Sabine Surveyors, Inc.
      Destrehan, Louisiana

      May testify to damages sustained by the M/V CHINA SPIRIT

7.    Paul Hayward
      American Bureau of Shipping
      990 N. Corporate Dr.
      Suite 307
      New Orleans, LA   70123

      May testify to damages sustained by the M/V CHINA SPIRIT

8.    Marek Dobrowski
      American Bureau of Shipping
      990 N. Corporate Dr.
      Suite 307
      New Orleans, LA   70123

      May testify to damages sustained by the M/V CHINA SPIRIT

9.    Kim Rasmussen and/or other representative(s) of A/S D/S TORM
      (by deposition)
      Marine Park
      Sundkrogsgade 10
      DK-2100 Copenhagen
      Denmark

      May testify to loss of hire damages sustained by the M/V CHINA SPIRIT,
      as well as charter party terms for Voyage Nos. 35, 35 and 37

10.   Brant Alexander, Chris Kitsos, George Duffy and/or other representative(s)
      of Navios Ship Agencies, Inc.
      110 James Drive West, Suite 120
      St. Rose, LA   70087

May testify to berthing arrangements and scheduling for the M/V CHINA SPIRIT, as well as damages sustained by the M/V CHINA SPIRIT

11.    Representative(s) of Port Ship Service, Inc.
       Post Office Box 369
       7121 North Peters Street
       Arabi, LA   70032

       May testify to damages sustained by the M/V CHINA SPIRIT

12.    Representatives(s) of Boland Marine & Manufacturing Company, Inc.
       1000 Tchoupitoulas Street
       P. O. Box 53287
       New Orleans, LA   70153

       May testify to damages sustained by the M/V CHINA SPIRIT

13.    Representative(s) of Cooper/T. Smith Mooring
       1240 Patterson Street
       New Orleans, LA   70114

       May testify to damages sustained by the M/V CHINA SPIRIT

14.    Representative(s) of Crescent Towing & Salvage Co. Inc.
       P. O. Box 6968
       New Orleans, LA   70174

       May testify to damages sustained by the M/V CHINA SPIRIT

15.    Representative(s) of Shanghai Lifeng Shipyard
       Jian Xinsha Road 25
       Shanghai, China   200124

       May testify to damages sustained by the M/V CHINA SPIRIT

25

16.    Representative(s) of Shanghai Marine Shipping Agency

May testify to damages sustained by the M/V CHINA SPIRIT

17.    Wayne Tedesco and/or other representative(s) of Intermare Agency
Services, Inc.
100 Alpha Drive, Suite 118
Destrehan, Louisiana  70047

May testify to berthing arrangements and scheduling for the M/V CHINA
SPIRIT at New Orleans

18.    Representative(s) of Blue Marine Transportation, Inc.
119 Enterprise Drive
Gretna, LA   70056

May testify to damages sustained by the M/V CHINA SPIRIT

19.    Any witness listed, introduced or sought to be introduced by any other
party to this litigation

20.    ~~Any witness needed to authenticate any exhibit~~

**(b) Blue Cloud's Witnesses**

<u>**Will Call**</u>:

1.    Ben Haveman
Technical Maritime

Expert Witness to testify regarding damages to the CHINA SPIRIT and
repairs conducted in New Orleans;

**May Call**:

1.    Bernard Teale (By Deposition)
      Andrew Moore & Associates

      Expert witness to testify regarding damages to the CHINA SPIRIT and
      reparis in Shanghai;

2.    Mike Asbury
      Beaufort Shipping Ltd.

      Witness to testify about the market rates for time and voyage charters at the
      time of the collision.

3.    Paul Chatelain and/or other representative of Navios Ship Agencies, Inc.

      Witness to testify about ADM's instructions to the CHINA SPIRIT
      regarding loading.

4.    One or more representatives of ADM and/or Intermare Shipping Agencies,
      Inc.

      Witness(es) to testify about ADM's instructions to the CHINA SPIRIT
      regarding availability of berths and loading.

5.    Any witness listed or called by the plaintiff.


**14.**    This matter is to be tried to the Court without a jury.

**15.**    The issue of liability will not be tried separately from that of quantum.  Defendant
          has admitted to liability in this matter.

**16.**    **Other matters that might expedite a disposition of this case.**

          None

**17.    Trial Time:**

Trial shall commence on Thursday, 20 September 2000 at 9:00 a.m.  It is estimated that trial shall last no more than two days.

**18.**    This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections or   additions prior to signing.  Hereafter, this order will control the course of trial and may not be amended except by order of the Court to prevent manifest injustice.

**19.**    The possibility of settlement was considered.

THUS DONE and signed, this 13th day of September 2001,

_____
JUDGE STANWOOD R. DUVAL, JR.

‡ Subject to a Minute Entry of this day.

28

Respectfully submitted,

MURPHY, ROGERS & SLOSS                    PHELPS DUNBAR

_____          _____
Robert H. Murphy, T.A. #9850             James H. Roussel, T/A. #11496
Scott E. Oliphant #23885                 Robin C. Minturn #25797
701 Poydras Street                       375 Canal Street, Suite 2000
400 One Shell Square                     New Orleans, Louisiana 70130
New Orleans, LA 70139                     Telephone: (504) 566-1311
Telephone: (504) 523-0400                Attorneys for Blue Cloud
Attorneys for Trans-Pacific Shipping     Shipping & Trading, Inc.
Company, as Owner of the
M/V CHINA SPIRIT


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have on this ⟨⟩ day of ~~August~~ September 2001, served a

copy of the foregoing pleading on counsel for all parties to this proceeding, either by

hand, by telefax or by placing same in the United States Mail, properly addressed, and

first class postage prepaid.


_____


300/1662


29